# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 22-40072

BOOKER T. HUFFMAN,

*Plaintiff-Appellee,*

v.

ACTIVISION PUBLISHING, INCORPORATED; ACTIVISION BLIZZARD, INCORPORATED; MAJOR LEAGUE GAMING CORPORATION; TREYARCH CORPORATION,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL, IN CASE NO. 2:19-CV-50, ROBERT WILLIAM SCHROEDER, III, U.S. DISTRICT JUDGE

## BRIEF FOR DEFENDANTS-APPELLANTS

MELISSA R. SMITH
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
(903) 934-8450
melissa@gillamsmithlaw.com

MARK A. LEMLEY
JESSICA ELAINE LANIER
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666
mlemley@durietangri.com
jlanier@durietangri.com

ANDREW ESBENSHADE
DURIE TANGRI LLP
953 East Third Street
Los Angeles, CA 90013
(213) 992-4499
aesbenshade@durietangri.com

*Attorneys for Defendants-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

(1)   No. 22-40072, *Huffman v. Activision Publishing*
      USDC No. 2:19-CV-50

(2)   The undersigned counsel of record certifies that the following listed persons
      and entities as described in the fourth sentence of Rule 28.2.1 have an
      interest in the outcome of this case.  These representations are made in order
      that the judges of this court may evaluate possible disqualification or
      recusal.

**Plaintiff-Appellee**:
Booker T. Huffman

**Counsel for Plaintiff-Appellee**:
Timothy Micah Dortch, Christopher D. Lindstrom:  Potts Law Firm LLP
Patrick Zummo:  Law Offices of Patrick Zummo
Jordan M. Havard:  Havard Law Firm

**Defendants-Appellants**:
Activision Publishing, Inc.
Activision Blizzard, Inc.
Major League Gaming Corp.
Treyarch Corporation

**Counsel for Defendants-Appellants**:
Edgar Leon Carter, Courtney B. Perez:  Carter Arnett PLLC
Daralyn J. Durie, Andrew Esbenshade, Joseph C. Gratz, Jessica E. Lanier,
Mark A. Lemley:  Durie Tangri LLP
Harry Lee Gillam, Jr., Bobby Lamb, Melissa R. Smith, James T.
Underwood:  Gillam & Smith, LLP

The holders of the common stock of Activision Blizzard, Inc.  Activision
Blizzard, Inc. is the parent company of Activision Publishing, Inc., Major
League Gaming, Inc., and Treyarch Corp.  No publicly held corporation
owns more than 10% of the stock of Activision Blizzard, Inc.

The directors and officers of Activision Blizzard, Inc., Activision
Publishing, Inc., Major League Gaming, Inc., and Treyarch Corp.

Participants in Activision Blizzard, Inc.'s incentive plans and related incentive plans.

Dated: April 4, 2022                    DURIE TANGRI LLP

By:            */s/ Mark A. Lemley*
               MARK A. LEMLEY

Attorneys for Defendants-Appellants
Activision Publishing, Inc., Activision
Blizzard, Inc., Major League Gaming Corp.,
and Treyarch Corporation

**STATEMENT REGARDING ORAL ARGUMENT**

Defendants-Appellants Activision Publishing, Inc., Activision Blizzard, Inc., Major League Gaming Corp., and Treyarch Corp. (collectively, "Defendants") respectfully request oral argument under Federal Rule of Appellate Procedure 34(a). This appeal presents important issues of law, and Defendants believe the Court would benefit from receiving a brief oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...................................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

I.    JURISDICTIONAL STATEMENT ....................................................1

II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW .................2

III.    INTRODUCTION ...............................................................................3

IV.    STATEMENT OF THE CASE ...........................................................5

    A.    Relevant Procedural History ...................................................5

        1.    Pleadings, Defendants' Letters to Plaintiff, Related Motion Practice, and Discovery ........................................5

        2.    Dispositive Motions ...........................................................6

        3.    Complete Defense Verdict at Trial and Post-Trial Briefing ...............................................................................7

    B.    Facts ........................................................................................8

        1.    In This Corner:  *Call of Duty* and the Origin of Prophet ................................................................................8

        2.    In the Opposite Corner:  a Former Wrestler and a Poster ...............................................................................12

        3.    Evidence Adduced in Discovery and Presented at Trial ..................................................................................15

V.    SUMMARY OF THE ARGUMENT ................................................21

VI.    STANDARD OF REVIEW ...............................................................23

VII.    ARGUMENT .....................................................................................23

A.    An Award of Attorneys' Fees to the Prevailing Party Is the "Rule Rather Than the Exception" in this Circuit. .............23

B.    Plaintiff's Case Was Objectively Unreasonable Because He Failed to Adduce Evidence to Support His Claims.............27

    1.    Plaintiff's Evidence of Copying at Trial Was Nonexistent. ....................................................28

    2.    Plaintiff Failed to Present Evidence at Trial to Support His DMCA Claim. .............................39

    3.    Plaintiff Failed to Present Evidence at Trial to Support His Damages Theory. .......................40

    4.    That a Case Survives Dispositive Motions Does Not Give Rise to *Per Se* Objective Reasonableness. ............................................41

C.    Compensation, Deterrence, and Motivation Support an Award of Fees. ...................................................43

    1.    Awarding Defendants Attorneys' Fees is Defendants' Only Compensation for Winning and Deters Future Objectively Unreasonable Lawsuits. .......43

    2.    Plaintiff Pursued His Claims Against Activision in Bad Faith. ..............................................47

    3.    The Trial Court Gave Short Shrift to the Other *Fogerty* Factors and Failed to Explain Why Compensation, Deterrence, and Motivation Did Not Favor a Fee Award. ................................50

VIII.  CONCLUSION AND PRAYER FOR RELIEF ................................51

CERTIFICATE OF SERVICE ..............................................52

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ..............................................53

**Cases:**

*Armour v. Knowles*,
512 F.3d 147 (5th Cir. 2007) .................................................................. 28, 29, 36

*Batiste v. Lewis*,
976 F.3d 493 (5th Cir. 2020) ................................................................... *passim*

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
27 F.4th 313 (5th Cir. 2022) ...............................................................................22

*Berg v. M&F W. Prods., Inc.*,
No. 6:19-cv-00418-JDK, 2021 WL 2646223 (E.D. Tex. June 28, 2021) ............33

*CJC Holdings, Inc. v. Wright & Lato, Inc.*,
979 F.2d 60 (5th Cir. 1992) ................................................................................24

*Compaq Comput. Corp. v. Ergonome Inc.*,
387 F.3d 403 (5th Cir. 2004) ..............................................................................41

*Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
965 F.3d 365 (5th Cir. 2020) ......................................................................... 23, 24

*Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*,
No. H-14-1903, 2018 WL 2048896 (S.D. Tex. May 2, 2018), *vacated on
other grounds*, 948 F.3d 261 (5th Cir. 2020) ......................................................24

*Ferguson v. Nat'l Broad. Co.*,
584 F.2d 111 (5th Cir. 1978) ..............................................................................29

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) .................................................................................. *passim*

*Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*,
No. H-14-1368, 2020 WL 821879 (S.D. Tex. Feb. 19, 2020),
*appeal dismissed*, 2020 WL 5642035 (5th Cir. July 16, 2020).................... 44, 46

*Gonzales v. Transfer Techs., Inc.*,
301 F.3d 608 (7th Cir. 2002) ..............................................................................50

*Guzman v. Hacienda Records & Recording Studio, Inc.*,
808 F.3d 1031 (5th Cir. 2015) ............................................................................29

*Hacienda Records, LP v. Ramos*,
No. 2:14-CV-19, 2019 WL 93306 (S.D. Tex. Jan. 3, 2019) ...................... 3, 25, 49

*Hunn v. Dan Wilson Homes, Inc.*,
789 F.3d 573 (5th Cir. 2015) ................................................................ 26, 41, 50

*HyperQuest, Inc. v. N'Site Sols., Inc.*,
632 F.3d 377 (7th Cir. 2011) ....................................................................... 25, 49

*Kirtsaeng v. John Wiley & Sons, Inc.*,
579 U.S. 197 (2016) ............................................................................... 3-4, 25, 43

*Leland Med. Ctrs., Inc. v. Weiss*,
No. 4:07cv67, 2007 WL 2900599 (E.D. Tex. Sept. 28, 2007) ............................ 40

*Lennar Homes of Texas Sales & Marketing, Ltd. v. Perry Homes, LLC*,
117 F. Supp. 3d 913 (S.D. Tex. 2015) ............................................................... 42

*Macro Niche Software, Inc. v. Imaging Sols. of Australia*,
603 F. App'x 351 (5th Cir. 2015), *aff'd sub nom.*
*Macro Niche Software, Inc. v. Imaging Sols. of Australia*,
603 F. App'x 351 (5th Cir. 2015) ...................................................................... 47

*Mary Ellen Enters. v. Camex, Inc.*,
68 F.3d 1065 (8th Cir. 1995) ............................................................................ 46

*Mattel, Inc. v. MGA Entm't, Inc.*,
705 F.3d 1108 (9th Cir. 2013) .......................................................................... 47

*McGaughey v. Twentieth Century Fox Film Corp.*,
12 F.3d 62 (5th Cir. 1994) ......................................................................... 3, 24, 49

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*,
526 F.3d 1093 (7th Cir. 2008) .......................................................................... 26

*Peel & Co. v. The Rug Market*,
238 F.3d 391 (5th Cir. 2001) ....................................................................... 28, 29

*Philpot v. WOS, Inc.*,
No. 1:18-CV-339-RP, 2019 WL 1767208 (W.D. Tex. Apr. 22, 2019) ............... 40

*Randolph v. Dimension Films*,
634 F. Supp. 2d 779 (S.D. Tex. 2009) .......................................................... 44, 46

*Recursion Software, Inc. v. Double-Take Software, Inc.*,
No. 4:10-CV-403, 2013 WL 12403528 (E.D. Tex. Jan. 3, 2013)........................41

*Small Justice LLC v. Xcentric Ventures LLC*,
873 F.3d 313 (1st Cir. 2017) ..............................................................................45

*Spear Mktg., Inc. v. Bancorpsouth Bank*,
No. 3:12-CV-3583-B, 2016 WL 193586 (N.D. Tex. Jan. 14, 2016),
*aff'd,* 844 F.3d 464 (5th Cir. 2016) ...................................................... 43, 44, 46

*Straus v. DVC Worldwide, Inc.*,
484 F. Supp. 2d 620 (S.D. Tex. 2007)................................................................37

*Virgin Records Am., Inc. v. Thompson*,
512 F.3d 724 (5th Cir. 2008) .................................................................... 23, 48

*Virtual Chart Sols. I Inc. v. Meredith*,
No. 4:17-cv-546, 2020 WL 1902530 (E.D. Tex. Jan. 13, 2020)........................27

*Virtual Chart Sols. I, Inc. v. Meredith*,
No. 4:17-cv-546, 2020 WL 896674 (E.D. Tex. Feb. 25, 2020),
*appeal filed sub nom. Virtual Chart Sols. I, Inc. v. Surgical Notes, Inc.*,
No. 20-40155 (5th Cir. Feb. 28, 2020) ................................................. 25, 27, 42

*Weeco Int'l, Inc. v. Superior Degassing Servs., Inc.*,
No. H-09-4003, 2012 WL 13075401 (S.D. Tex. Mar. 23, 2012) ................. 41-42

*YS Built, LLC v. Huang*,
No. C15-1411-BJR, 2017 WL 1093207 (W.D. Wash. Mar. 23, 2017),
*aff'd sub nom. YS Built LLC v. Ya Hsing Chiang Cind Huang*,
739 F. App'x 414 (9th Cir. 2019)........................................................................50

**Statutes and Other Authorities:**

17 U.S.C. § 101 ......................................................................................................1

17 U.S.C. § 505 ........................................................................................... 2, 6, 23

17 U.S.C. § 1202 .......................................................................................... 6, 7, 40

17 U.S.C. § 1202(a) ........................................................................... 7, 39, 40, 42

17 U.S.C. § 1202(b) ...........................................................................................7, 40

17 U.S.C. § 1203(b)(5).........................................................................................23

28 U.S.C. § 1331 ...............................................................................................1

29 U.S.C. § 1291 ...............................................................................................1

Fed. R. App. P. 4(a)(4)(B)(i)...............................................................................1

W. Strauss, Damage Provisions of the Copyright Law, Study No. 22
  (H. Judiciary Comm. Print 1960) .......................................................43

## I.  JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Texas had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."  Plaintiff's suit against Defendants was based on United States copyright law, in particular 17 U.S.C. § 101, et seq.  This Court has jurisdiction over this appeal pursuant to 29 U.S.C. § 1291 because the judgment below is a final judgment of the district court.  The district court order denying Defendants' motion for attorneys' fees and judgment closing the case were entered on January 4, 2022.  Defendants filed the Notice of Appeal on February 3, 2022 pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(i).  This appeal is from a final judgment of the district court that denied Defendants' motion for attorneys' fees.

## II. STATEMENT OF ISSUES PRESENTED FOR REVIEW

Did the trial court abuse its discretion by denying Defendants' motion for attorneys' fees pursuant to 17 U.S.C. § 505?

## III. INTRODUCTION

Defendants spent two years litigating this case, and, despite a complete defense victory after a jury trial in which Plaintiff put forward virtually no evidence supporting his claims, they remain out of pocket millions of dollars. This result is not only inequitable; it is inconsistent with the law in the Fifth Circuit.

Plaintiff's evidentiary showing at trial, for both his infringement and Digital Millennium Copyright Act ("DMCA") claims, was nearly nonexistent. He did not adduce evidence to show even a possibility that Defendants accessed the allegedly infringed work (the "Arroza Poster"), and he failed to rebut Defendants' overwhelming evidence of independent creation, address striking similarity, or produce evidence that Defendants distributed false copyright management information ("CMI") at all, let alone with the requisite double scienter. In a copyright infringement case, awarding fees to the prevailing party is the "rule rather than the exception," particularly where the prevailing party is an accused infringer. *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994) (citations omitted); *see Hacienda Records, LP v. Ramos*, No. 2:14-CV-19, 2019 WL 93306, at \*5 (S.D. Tex. Jan. 3, 2019). As explained in detail below, no facts or circumstances in this case justify an exception.

The Copyright Act protects works so that the general public might be "enrich[ed] . . . through access to creative works." *Kirtsaeng v. John Wiley &*

*Sons, Inc.*, 579 U.S. 197, 204 (2016) (citation omitted).  Defendants, unlike Plaintiff, are in the business of creating, and this lawsuit (and others if parties like Plaintiff are not dissuaded from bringing similarly meritless claims) was destructive:  It diverted energy and resources that Defendants might have spent on artistic pursuits, decreasing both the likelihood of production of new works and threatening the quality and integrity of the works that Defendants were able to create.

Plaintiff alleged that his copyright in the Arroza Poster was infringed by a marketing image of a game character named David "Prophet" Wilkes ("Prophet Image") on the basis of nothing more than a passing resemblance between the two images.  The evidence was clear and communicated to Plaintiff early in the case that (i) Defendants did not have the Arroza Poster in their possession or have access to it, much less manipulate it or its CMI, (ii) no Defendant was even aware of the Arroza Poster until the lawsuit, and (iii) Defendants independently created the Prophet Image from a photoshoot of a live model, and that creative process was well-documented.  That evidence, which Defendants provided to Plaintiff in August 2019, shortly after the case was filed, was unrebutted and negated both access and striking similarity.  Nevertheless, Plaintiff ignored the evidence and persisted in seeking tens of millions of dollars in damages, hoping that the great expense of litigating would persuade Defendants to settle.

4

In denying Defendants' attorneys' fees, the district court abused its discretion in at least four ways: (i) the court failed to apply the standard in the Fifth Circuit that awarding fees to the prevailing party in a copyright case is the rule, not the exception; (ii) the court effectively found that denial of summary judgment negates the possibility of finding objective unreasonableness of Plaintiff's claim; (iii) the court failed to analyze each of the *Fogerty* factors; and (iv) the court failed to give due consideration to Plaintiff's multiple evidentiary deficiencies at trial. Defendants are entitled to attorneys' fees and request that this Court remand this case to the district court for a determination of the amount of fees to be awarded.

## IV. STATEMENT OF THE CASE

### A. Relevant Procedural History

#### 1. Pleadings, Defendants' Letters to Plaintiff, Related Motion Practice, and Discovery

Plaintiff alleged that a marketing image (the Prophet Image) used in limited circumstances to promote the popular video game *Call of Duty: Black Ops 4* infringed a poster (the Arroza Poster) drawn to promote a little-known comic book featuring a character called G.I. Bro. ROA.44 ¶ 6. Plaintiff filed his first complaint on February 12, 2019, alleging one count of copyright infringement. ROA.43, 49. Prior to filing his complaint, he did not contact any of the Defendants to inform them of his suspicions or to ask questions about how the Prophet Image

was created.  ROA.8172.  On July 18, 2019, Plaintiff filed his first amended complaint.  ROA.982.

On August 12, 2019, Defendants sent Plaintiff a letter ("August Letter") incorporating excerpts from documents demonstrating that the Prophet Image was independently created from a photoshoot of model Williams Romeo and informing Plaintiff that Defendants would "seek all appropriate remedies, including attorney's fees and costs under 17 U.S.C. § 505. . . ."  ROA.8198-205.  Plaintiff never answered the August Letter.

After receiving this information establishing that there was no reasonable basis for his claim, Plaintiff doubled down and filed a second amended complaint, adding a claim for violation of 17 U.S.C. § 1202 of the DMCA, which governs removal of CMI from existing copyrighted works.  ROA.1121, 1128-29.  On March 23, 2020, Defendants sent Plaintiff a second letter ("March Letter") that explained why Plaintiff's newly added DMCA claims were, like Plaintiff's infringement claims, untenable.  ROA.8172-73, 8175, 8276-80.  Plaintiff ignored the March Letter as well.  By May 22, 2020, Defendants had completed the bulk of their document production, producing more than 480,000 pages.  ROA.8192 ¶ 3.

### 2. Dispositive Motions

On September 24, 2020, Defendants filed three motions for summary judgment:  (i) one arguing that Plaintiff lacked standing to sue and that there was

no evidence to support his claim of copyright infringement; (ii) the second arguing that there was no evidence that Defendants had violated section 1202 of the DMCA; and (iii) the third arguing that there was no evidence of a nexus between the alleged infringement and the profits Plaintiff sought.  ROA.6178, 6898, 6922. On December 14, 2020, Magistrate Judge Payne, without a hearing, recommended the denial of Defendants' motions concerning standing/infringement, and nexus (motions (i) and (iii)) and recommended that Defendants' section 1202 motion be granted with respect to section 1202(b) and denied with respect to 1202(a) (motion (ii)).  ROA.2170, 2199-200.  Over Defendants' objections, on May 26, 2021, Judge Schroeder adopted Judge Payne's report and recommendation, again without a hearing.  ROA.2810-12.

### 3. Complete Defense Verdict at Trial and Post-Trial Briefing

On February 2, 2021, using deposition testimony and a document produced in this litigation from this case, counsel for Plaintiff's filed a new, unrelated lawsuit on behalf of a different plaintiff against Defendants.  *Haugen v. Activision Publ'g, Inc.*, No. 2:21-cv-00035-JRG (E.D. Tex.).  On June 21, 2021, trial began in this case, culminating with a complete defense verdict on June 24, 2021 after approximately three hours of jury deliberation.  ROA.5883:11-5884:13.  After Plaintiff rested his case, Defendants filed a motion for judgment as a matter of law. ROA.3042.  Judge Schroeder held that motion in abeyance until the culmination of

trial.  ROA.5760:4-5761:11.  After Defendants won, their motion for judgment as a matter of law was moot.

Pursuant to a revised post-trial briefing schedule ordered by Judge Schroeder, Defendants moved for attorneys' fees on August 2, 2021.  ROA.8168. Defendants moved for a bill of costs on August 16, 2021, and, at the court's request, filed supplemental briefing on October 19, 2021.  ROA.3678, 3897. Defendants' motion for costs was granted in part and denied in small part, and Defendants' motion for attorneys' fees was denied on January 4, 2022. ROA.3925, 3936-38.

### B.     Facts

#### 1.     In This Corner:  *Call of Duty* and the Origin of Prophet

The first *Call of Duty* game was released in 2003, and, since then, the franchise has grown into one of the most successful video game series of all time. ROA. 5634:9-10, 5587:1-6.  Treyarch Corporation ("Treyarch") is an Activision Publishing, Inc. and Activision Blizzard, Inc. (collectively, "Activision") subsidiary that developed the *Black Ops* installments of the *Call of Duty* franchise. ROA.5526:4-5527:7.

The character David "Prophet" Wilkes, a Black character with cybernetic enhancements, originally appeared in *Call of Duty: Black Ops III*, which was released in 2015.  ROA.5529:3-5531:15, 5533:24-25.  Prophet was one of many

in-game "specialists" players could use for play.  ROA.5534:14-5535:2.  When

Activision commissioned *Black Ops 4* for a 2018 release, it decided to bring

Prophet back.  ROA.5534:14-5535:2.

### a.  Updating Prophet for *Black Ops 4*

Before a video game character is rendered for a game, artists create what is

called "concept art."  ROA.5537:6-13.  Finalized concept art serves as a visual

reference for artists working on the video game.  ROA.5537:6-13.  To update the

in-game version of Prophet for *Black Ops 4* from its *Black Ops 3* depiction,

Treyarch contracted with an outside vendor called Karakter Design Studios

("Karakter").  ROA.5535:16-5537:5.  Starting June 27, 2017, Treyarch and

Karakter worked together over ten design rounds of edits and refinements to create

concept art for an updated Prophet for *Black Ops 4*.  ROA.5537:14-5543:17,

5544:19-5545:12, 5546:5-5558:24, *see also* ROA.8027-48, 8049, 8050-65, 8066,

8076-8084, 8085-89, 8091-94, 5996 (exhibits discussed in testimony).  Karakter

documented its inspirations for this process.  ROA.5558:25-5560:4, ROA.8090.

At no point in this extensive and well-documented process did Treyarch or

Karakter look at, work from, or even become aware of Plaintiff or any image of

him.  *See, e.g.*, ROA.5545:13-5546:3, 5559:25-5560:10, ROA.8090.

### b.      Creating the Prophet Image

In January 2018, Treyarch sent Petrol Advertising ("Petrol") the final concept art for including Prophet and references used to make that concept art. ROA.8001, ROA.5645:9-5646:14.



ROA.5996 (Prophet final concept art).  Petrol then cast actors to play the specialists for a photoshoot to create marketing materials for the game. ROA.5642:23-5645:2.  Petrol recommended that Activision hire William Romeo to be Prophet, and Activision followed Petrol's recommendation.  ROA.5644:22-5645:2.

In February 2018, using only the reference materials Treyarch provided, Petrol costumed Mr. Romeo and directed him (and other actors cast to play other specialists) through photoshoots.  ROA.5645:9-5649:5.  From the thousands of photographs taken in numerous poses, Petrol and Activision ultimately picked a

single photograph for each specialist.  ROA.5654:9-5669:3, ROA.5946-95, 6002, 6032-36, 6038-40.  Mr. Romeo's chosen photo was the basis for the Prophet Image.  ROA.5669:4-22.





ROA.6025 (photograph of Romeo as Prophet), ROA.8006 (Prophet Image).

The Prophet Image is a stylized photograph of Mr. Romeo dressed as Prophet. In the image, most of Prophet's body is in shadow—only a small portion of the right side of his face is illuminated. Prophet is a muscular Black man. He holds a military weapon in a posture of readiness, pointing to the left side of his body, in the direction of his elbow. He is wearing military garb: a flak jacket with full sleeves, cargo utility pants, and functional headgear not clearly visible. Prophet has dreadlocks that rest behind his shoulders.

The background behind Prophet has four bright yellow, orange, and red columns that evoke the appearance of flames or an explosion and signify the fourth installation of *Black Ops*. The remainder of the background is black and gray with swirling smoke. The word "Prophet" appears near the bottom of the image.

The Prophet Image was used alongside other similar images of the other specialists in limited advertising and in optional specialty items for purchase by players of the game. ROA.6218-20 ¶¶ 5, 6, 10. The Prophet Image was not used in the cover of the game, in any television or online advertising, or in video game trailers. ROA.6218-19 ¶ 10.

### 2. In the Opposite Corner: a Former Wrestler and a Poster

Plaintiff is a former World Wrestling Entertainment wrestler. ROA.5216:7-18, 5217:4-11. He is best known in the ring as "Booker T" but, at times, he also wrestled as "G.I. Bro." ROA.5521:1-15.

### a. *G.I. Bro and the Dragon of Death*

In 2015, Plaintiff hired Travis Huffman of Last Sentry Comics ("Last Sentry") to create a comic book series, later titled *G.I. Bro and the Dragon of Death*, based on Plaintiff's wrestling persona. ROA.5224:18-5227:4, 5227:24-5228:15, 5939. Only two issues of the comic book were created, and, combined, they sold fewer than 2,000 copies. ROA.6769 (Travis Huffman); ROA.5238:5-10, 5241:11-21. In 2016, Plaintiff (through Travis Huffman) paid an artist named Erwin Arroza $85 to create promotional artwork for the project. ROA.5277:11-5279:12, 5476:16-5477:17. Mr. Arroza subsequently drew the work that Plaintiff contends was infringed (the Arroza Poster). ROA.5277:11-5279:12, 5424:17-5425:15, ROA.6050.

### b. The Arroza Poster

The Arroza Poster is a drawing of Plaintiff as G.I. Bro, a muscular Black man, wearing a black short-sleeve tee shirt, a black du-rag, dark gloves, and dark cargo trousers with full pouches. His biceps and forearms are exposed. G.I. Bro wears a scowl. He is holding a weapon, which is pointed down, toward his left foot. G.I. Bro has dreadlocks that extend just past his shoulders, prominently resting on the top of his chest.

In the bottom right-hand corner of the Arroza Poster is a drawing of a woman in a form-fitting black bodysuit and utility belt. She is holding two

handguns, both pointed up. The background of the Arroza Poster is yellow-orange at the top, with a purple-gray shadow at the top left-hand corner, that changes to red near the bottom of the poster. The background has a crinkled texture, and a spotlight is fixed on G.I. Bro's face, as if he is being lined up in a rifle scope.



ROA.6050 (Arroza Poster depicting comic book character G.I. Bro).

The Arroza Poster was created on or about May 11, 2016, and fewer than 500 copies were printed. ROA.6772, 5289:7-9, 5338:24-5339:11, 5472:10-13, ROA.6050. It was handed out at a small number of comic book conventions Plaintiff attended, mostly in East Texas, and on Last Sentry's social media page. ROA. 6771, ROA.5444:19-5445:8 (Travis Huffman). The Arroza Poster was not otherwise publicly displayed. There was no evidence anyone affiliated with

Defendants attended any of those conventions or accessed Last Sentry's social media page.

No one involved in creating the Prophet Image was aware of the image of Plaintiff at issue in the case until Plaintiff filed this lawsuit, and the image does not appear anywhere in the nearly half a million pages of documents produced by Defendants in the case.

### 3. Evidence Adduced in Discovery and Presented at Trial

Defendants' productions contained mountains of evidence documenting the creation of the Prophet Image, including, for example:  (i) inspirations and references for Prophet concept art for *Black Ops 4*; (ii) multiple rounds of drafts of the concept art and notes for revisions; (iii) the finalized concept art itself; (iv) notes concerning casting for the photo shoot; (v) pre-shoot test photographs of William Romeo, the actor who was cast for the photo shoot, in costume as Prophet; and (vi) hundreds of photographs of William Romeo as the character Prophet in dozens of poses and with various accessories, including the exact photograph that was the basis for the Prophet Image.  ROA.6026.  The production did not contain any image of or reference to Plaintiff or the Arroza Poster, which Plaintiff's counsel admitted at closing.  ROA.5849:17-18.  Plaintiff, meanwhile, leading up to trial neither identified nor produced any documentation or testimony that any

15

Defendant saw the Arroza Poster or was aware of it, the G.I. Bro Comics, or Plaintiff.

At trial, Plaintiff sought to misdirect the jury from the lack of any supporting evidence. He started off by promising the jury they would hear testimony about Defendants' access to the Arroza Poster and also that Plaintiff would present testimony from both Plaintiff and from Defendants' vendor Petrol that Petrol had worked with Plaintiff previously. ROA.5173:24-5174:9, 5175:10-14. But neither of these assertions were true, and the promised evidence never materialized.

In fact, Plaintiff presented no evidence that Defendants accessed the Arroza Poster. The only testimony of purported access was that both Plaintiff and certain Activision employees attended the 2015 Comic Con. ROA.5252:10-23. This testimony was irrelevant, however; the Arroza Poster, the only image Plaintiff claimed was infringed, was not created until 2016, the year *after* the event at which Plaintiff sought to hold up as the point of alleged access. ROA.5289:7-9, 5339:2-7, ROA.6050.

Further, Plaintiff admitted he had no knowledge of and did nothing to investigate how Mr. Arroza drew the Arroza Poster or what inspiration he used to create the Arroza Poster. ROA.5277:11-5280:22, 5287:23-5289:25, 5362:21-5366:19, ROA.5447:4-5449:9 (Travis Huffman). Plaintiff also admitted that Plaintiff's body in the Arroza Poster and the body of a *G.I. Joe* movie poster of

16

Dwayne "The Rock" Johnson are "strikingly similar."  ROA.5289:23-25, ROA.6050, 6844.

Plaintiff also did not present testimony that Petrol had worked with Plaintiff. Contrary to counsel's promise at opening, neither Plaintiff nor Petrol testified that they had worked together, and the only testimony at trial was that Petrol had never worked with Plaintiff.  *See* ROA.5671:14-17 (Rogers).  Plaintiff was of course aware he had never worked with Petrol, and his counsel was aware that Petrol's corporate representative had testified in deposition that Petrol had not worked with Plaintiff.  ROA.5481:20-24, 8237:18-8241:6 (Hunter).  Yet, counsel nevertheless misstated to the jury what the evidence would be.

Despite the trial testimony, Plaintiff's counsel doubled down on this mischaracterization in closing rebuttal.  ROA.5873:12-14 ("Why didn't they bring Mr. Hunter?  When Mr. Hunter said, Yeah, I actually do know Booker T., he's been to our studios, we photographed him for wrestling things before -- I mean video games, I apologize.").  In truth, Petrol's representative Alan Hunter had never testified that he knew Plaintiff, that Plaintiff had been to Petrol's studios or that Petrol had photographed Plaintiff.[1]

---

[1] The record suggests that Plaintiff's counsel attempted to mislead Mr. Hunter into testifying that Petrol had photographed Plaintiff for a prior video game.  At Mr. Hunter's deposition, Plaintiff's counsel presented him with an attorney-made composite exhibit:  two pages from Petrol's website and three pages that ***did not***

17

Further, Plaintiff insinuated at closing to the jury that Defendants were hiding or had destroyed evidence. ROA.5875:4-16. This was not only false and entirely unsupported, but also in violation of the trial court's ruling on motion in *limine* 3, which held "[t]he parties are not permitted to elicit testimony, offer evidence, or argue about any alleged discovery deficiencies before the jury." ROA.2817-18.

Ultimately, Plaintiff did not present evidence to support either his infringement or his DMCA claim. Plaintiff's infringement case lacked any evidence that Defendants or their vendors had seen the Arroza Poster or that they were aware of Plaintiff, the character G.I. Bro, or the comic book series based on G.I. Bro. There was, in other words, no evidence that Defendants had ever accessed the Arroza Poster.

---

come from Petrol's website, one of which contained an image of Plaintiff. ROA.8250-54; see also ROA.8238:6-22. Counsel later admitted the pages with Plaintiff's image were not from Petrol's website. See ROA.4980:9-4986:2 ("I'll admit they are not from the website."). Yet, Plaintiff's counsel combined the unconnected images to make it appear they were all from Petrol's website and presented the composite exhibit to Mr. Hunter at his deposition. ROA.8238:11-14 ("Mr. Hunter, I'm showing you now what's Exhibit 61 [ROA.8250-54]. I will tell you I couldn't get it to print very well from your very good website, by the way, but this is a picture from your website."). However, even when presented with the misleading composite exhibit, Mr. Hunter did not testify as Plaintiff's counsel apparently wished him to do. ROA.8237:18-8238:5, 8238:25-8239:16, 8239:20-8241:6.

Meanwhile, though it was not their burden to do so, Defendants presented overwhelming evidence of independent creation in their case in chief. Much of this documentary evidence was not only within Defendants' voluminous productions but identified to Plaintiff at the outset of the lawsuit, in the August and March Letters. Defendants also presented expert and lay witness testimony about the many differences between the two images and the fact that the small number of similarities were tropes and therefore unprotectable. *See, e.g.*, ROA.5712:23-5719:21 (Bogost) (Q: As you look at these two images, DTX 2029 [ROA.6050] and DTX 1024 [ROA.8006], and based on your expertise, do you see any substantial similarities between them? A: I -- I see two examples of a dreadlocked warrior character type, but two very distinctive characters and two renditions of those characters, visually.). Plaintiff presented no affirmative evidence that the Arroza Poster and the Prophet Image were strikingly similar.

One key witness, whom Plaintiff did not attempt to depose, testified for the first time at trial: Mr. Romeo, the model and actor cast to play Prophet in the marketing photo shoot. He testified at length about how he was cast, how he was costumed, that he was photographed in many different poses, and that most of his poses were his idea. ROA.5733:17-5741:21. He also testified that he had not seen the Arroza Poster before the lawsuit and that, while he had heard of Plaintiff in the

19

context of wrestling, he had not heard of G.I. Bro before the lawsuit. ROA.5744:4-15.

Mr. Romeo also testified that the Prophet Image looked like him and that the Arroza Poster looked like Plaintiff. ROA.5744:19-5745:5. He, like other of Defendants' witnesses, testified that the Arroza Poster and the Prophet Image did not look similar. ROA.5744:19-22.

With respect to Plaintiff's DMCA claim, he presented no evidence that Defendants distributed any CMI in connection with the Prophet Image, much less distributed false CMI. Plaintiff also did not present evidence that any CMI was attached to the Prophet Image. Plaintiff only introduced a picture of a *Black Ops 4* game disc and other clipped copyright symbols, none of which were attached to the Prophet Image. ROA.5512:23-5513:24, ROA.7181-82. But he offered no testimony or evidence that this game disc was distributed with the Prophet Image. The Prophet Image itself has no CMI.



ROA.8006.

Finally, Plaintiff made no attempt to substantiate his damages claim.  He declined to call his own damages expert and did not adduce any testimony about *Black Ops 4* revenue or make any effort to show that any of that revenue was attributable to the Prophet Image.  Nonetheless, Plaintiff asked the jury to award him over $32 million in damages through nothing more than attorney argument.  ROA.5854:3-5855:17.

## V.   SUMMARY OF THE ARGUMENT

The trial court abused its discretion in denying fees.  It ignored the law in this Court that the award of fees is the rule rather than the exception, instead seeming to adopt a presumption against awarding fees.  And it focused on only one

21

of the four factors this Court considers in deciding whether to award fees in copyright cases.

An award of attorneys' fees in the Fifth Circuit for copyright cases is the rule rather than the exception, and nothing in the history of this case weighs in favor of its being treated as the exception. Plaintiff's case was objectively unreasonable. He offered no evidence to support his claims, and he had no response to Defendants' detailed presentation of their independent creation of the Prophet Image (much of which Plaintiff was aware of since the August Letter—sent to Plaintiff nearly two years before trial—but ignored). Going into trial, Plaintiff knew his case was weak, and he sought to compensate for his lack of evidence by attempting to mislead the jury.

Here, the aims of compensation and deterrence are served by a fee award so that creators like Defendants are incentivized to litigate meritorious defenses rather than be forced to settle to save defense costs. A fee award also deters objectively unreasonable lawsuits like Plaintiff's. Finally, Plaintiff acted in bad faith by failing to make any effort to verify his suspicion of copying prior to bringing this lawsuit and in continuing to litigate it after Defendants demonstrated to him that his claims lacked merit. *See Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 326 (5th Cir. 2022) (affirming award of attorneys' fees to prevailing

defendant where plaintiff not a "typical copyright plaintiff seeking a fair return for his creative labor") (internal quotation marks omitted) (citation omitted).

## VI.  STANDARD OF REVIEW

A district court's decision to grant or deny motions for attorneys' fees is reviewed for abuse of discretion.  *Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 386 (5th Cir. 2020); *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 725 (5th Cir. 2008) (per curiam).  A court abuses its discretion when it bases its ruling on either "an erroneous view of the law or a clearly erroneous assessment of the evidence."  *Virgin Records*, 512 F.3d at 725 (citation omitted).

## VII.  ARGUMENT

The trial court's decision to withhold an award of attorneys' fees from Defendants was a deviation from the Fifth Circuit's application of 17 U.S.C. § 505, where the award of fees, particularly to prevailing defendants, is the default.  A careful and precise application of the governing legal framework supports an award of fees here.

### A.    An Award of Attorneys' Fees to the Prevailing Party Is the "Rule Rather Than the Exception" in this Circuit.

The Copyright Act permits a court to "award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505; 17 U.S.C. § 1203(b)(5); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994).  Courts award fees more

23

readily in copyright cases than in other types of cases.  For instance, in patent and trademark cases, a court may award attorneys' fees only in "exceptional" cases, but, in copyright cases, a "more liberal approach" is taken, and a court need not find a case "exceptional" to award fees.  *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir. 1992).  In fact, in the Fifth Circuit, declining to award fees to the prevailing party in a copyright case is "exceptional."  Fees "should be awarded routinely," an award is the "*rule rather than the exception*." *McGaughey*, 12 F.3d at 65 (citations omitted) (emphasis added).

Courts in the Fifth Circuit apply the following non-exclusive list of factors in copyright cases (including DMCA cases)[2] to award fees, or determine the case is an exception to the rule such that an award of fees is not warranted: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence."  *Dig. Drilling Data Sys.*, *L.L.C.*, 965 F.3d at 385-86 (quoting *Fogerty*, 510 U.S. at 534 n.19).  These factors are meant to guide a court's discretion, but only insofar as the factors are "faithful to the purposes of the Copyright Act," the primary goal of which is to "enrich[] the

---

[2] *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, No. H-14-1903, 2018 WL 2048896, at **12-16 (S.D. Tex. May 2, 2018), *vacated on other grounds*, 948 F.3d 261 (5th Cir. 2020).

general public through access to creative works . . . ." *Fogerty*, 510 U.S. at 534 n.19, 527.

When weighing whether to award fees, courts may not hold prevailing defendants to a higher standard than prevailing plaintiffs. *Fogerty*, 510 U.S. at 527; *see also Batiste v. Lewis*, 976 F.3d 493, 507 (5th Cir. 2020) (noting that *Fogerty* rejected the practice of requiring a showing of bad faith or frivolousness before defendants could recover fees). Rather, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty*, 510 U.S. at 527. Just as a copyright holder of an obviously infringed copyright has good reason to litigate, "a person defending against a patently meritless copyright claim has every incentive to keep fighting, no matter that attorney's fees in a protracted suit might be as or more costly than a settlement." *Kirtsaeng*, 579 U.S. at 204. Therefore, when a defendant prevails, the presumption in favor of awarding fees is "unusually strong." *Hacienda Records, LP*, 2019 WL 93306, at *5 (citation omitted); *see also Virtual Chart Sols. I, Inc. v. Meredith*, No. 4:17cv546, 2020 WL 896674, at *5 (E.D. Tex. Feb. 25, 2020), *appeal filed sub nom. Virtual Chart Sols. I, Inc. v. Surgical Notes, Inc.*, No. 20-40155 (5th Cir. Feb. 28, 2020); *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 387 (7th Cir. 2011) ("Defendants who defeat a copyright infringement action

are entitled to a strong presumption in favor of a grant of fees." (citing *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008))).

Here, the district court did not apply any presumption in favor of awarding fees, let alone the requisite "unusually strong" presumption, and it abused its discretion in denying Defendants' motion for attorneys' fees.

First, the court committed an error of law and a clearly erroneous assessment of the evidence in concluding that Plaintiff's case was not objectively unreasonable, ignoring the dearth of evidence presented by Plaintiff at trial. In its objective reasonableness analysis, the court relied almost exclusively on the fact that Plaintiff's case survived Defendants' motions for summary judgment, coming perilously close to holding that a case's survival through trial negates objective unreasonableness. This is not the law in the Fifth Circuit, where attorneys' fees are routinely awarded post-trial. *E.g.*, *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015) (affirming award of attorneys' fees to prevailing party after bench trial on copyright issues).

Second, the district court confined its analysis to the objective reasonableness of Plaintiff's case. The court's application of the *Fogerty* factors, and consequently its explanation of its reasoning, was therefore incomplete, which on its own, merits remand at a minimum. Moreover, the *Fogerty* factors of compensation, deterrence, and motivation each weigh heavily in favor of an

attorneys' fee award, and, at a minimum, certainly provide no reason to circumvent the presumption that a fee should be awarded. Accordingly, this Court can and should conclude that an award of fees is justified without the need for a remand. We discuss each issue in turn.

**B. Plaintiff's Case Was Objectively Unreasonable Because He Failed to Adduce Evidence to Support His Claims.**

A case is unreasonable where it advocates objectively weak claims, including an untenable theory of law or where a plaintiff's litigation position lacks factual support. *See Batiste*, 976 F.3d at 507-08; *see also Virtual Chart Sols. I Inc. v. Meredith*, No. 4:17-cv-546, 2020 WL 1902530, at \*\*10-11 (E.D. Tex. Jan. 13, 2020) (case objectively weak and borderline objectively unreasonable because no evidence offered to support elements of copyright infringement claim), *adopting report & recommendation*, 2020 WL 896674, at \*5.

Plaintiff's case was objectively unreasonable and should never have survived to trial. For two years, he ignored independent creation evidence that foreclosed his speculation that Defendants copied the Arroza Poster and failed to present any evidence at trial to support his claims. At trial, he not only had no evidence to rebut Defendants' independent creation evidence, he had no evidence whatsoever of any copying or even a plausible theory of access. In an attempt to cloak this deficiency, he misrepresented pieces of evidence that *were* in the record.

Plaintiff's recalcitrance prolonged this case, which he was bound to lose, and contravened the purposes of the Copyright Act.

### 1. Plaintiff's Evidence of Copying at Trial Was Nonexistent.

#### a. Legal Standard

To prove infringement, the owner of a copyright must show both factual copying and actionable copying. *Batiste v. Lewis*, 976 F.3d at 502-05. Factual copying tests whether copying occurred, and actionable copying tests whether the material copied was protectable under copyright. Factual copying can be proven by direct evidence (for example, an admission that copying occurred) or by circumstantial evidence. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). Plaintiff did not seek to introduce direct evidence of copying.

A plaintiff can show factual copying circumstantially by showing the defendant had more than a bare possibility of access to the allegedly infringed work and probative similarity between the plaintiff's work and the accused work. *Armour*, 512 F.3d at 152-53 (citing *Peel & Co. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001)). In the Fifth Circuit access may not be proven by showing only "[a] bare possibility." *Id.* at 153 (citation omitted) (alteration in original). A finding of access also may not be based on "speculation or conjecture." *Id.* (citation omitted)

Where a plaintiff lacks sufficient evidence of access, he must prove striking similarity—similarity that could only be explained by actual copying—between the works in order to meet his burden on factual copying. *Armour*, 512 F.3d at 152 n.3. Striking similarity exists only where the similarities between works are such that they can only be explained by actual copying, rather than by coincidence, independent creation, or prior common source. *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1039 (5th Cir. 2015).

A showing by an accused infringer that her work was independently created negates any inference of copying based on similarity and therefore negates the required element of factual copying. *Batiste*, 976 F.3d at 504 ("Without proof of access, [plaintiff] must show 'striking similarity' between the defendants' songs and his. To meet that burden, he must point to 'similarities . . . that can only be explained by copying, rather than by coincidence, independent creation, or prior common source.'") (citation omitted) (second alteration in original); *see also Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113-14 (5th Cir. 1978) ("Even without proof of access, plaintiff could still make out her case if she showed that the two works were not just substantially similar, but were so strikingly similar as to preclude the possibility of independent creation."). If independent creation is shown, and not rebutted by evidence of actual copying, there can be no copyright infringement. *See Peel & Co.*, 238 F.3d at 395.

**b.      At Trial, Plaintiff Offered No Evidence of Access, Copying, or Striking Similarity, and Did Not Rebut the Evidence of Independent Creation.**

Plaintiff's evidence at trial amounted to no more than introducing evidence that Plaintiff owned the copyright to the Arroza Poster.  There was no evidence to counter Defendants' overwhelming evidence of independent creation, much of which Plaintiff had known about for nearly two years, including no evidence to contradict the testimony of Activision's employees, employees of its vendor Petrol (Mr. Rogers and Mr. Hunter), or Mr. Romeo about how the Prophet Image was created.  There was also no evidence whatsoever of copying.

**(a)      Plaintiff Presented No Evidence of Access at Trial.**

Plaintiff's theory of the case was that Defendants had perhaps accessed the Arroza Poster at comic book or wrestling conventions.  Yet, he had no evidence to support this notion, and his suggestion that it could have happened at the 2015 San Diego Comic Con is foreclosed by the fact that the Arroza Poster did not exist in 2015.  Plaintiff presented no testimony or documentation that Defendants or its vendors Karakter and Petrol had ever seen the Arroza Poster or were aware of the G.I. Bro comics.  He did not testify that he had ever provided the Arroza Poster to Defendants, Karakter, or Petrol.  He testified only that he attended some conventions, *e.g.*, ROA.5207:20-5208:2, 5245:8-18, 5248:2-5249:9, 5252:19-21, and that he had the Arroza Poster with him at some conventions, ROA.5249:21-

5250:5, 5408:4-5409:25.  Plaintiff presented no evidence—no testimony, no documentation—that Activision was present at any convention where the Arroza Poster was present.  Nor did Plaintiff present any evidence that Defendants, Karakter, or Petrol had seen the Arroza Poster on Last Sentry's social media page. Plaintiff's counsel did not even ask Defendants' witnesses (live or designated) whether they had seen the Arroza Poster prior to trial.  *See, e.g.*, ROA.5585:8-5586:5.  This is unsurprising:  Plaintiff's counsel knew the answer would be "no."

In short, Plaintiff put on no evidence at all that the Arroza Poster and Activision were ever in the same physical or virtual place at the same time. Plaintiff also admitted that he had no evidence that Defendants copied the Arroza Poster:

> Q:  But you have no evidence to back it up, do you, sir?
> A:  I have no -- no one's called me or told me or anything, no one's sent me emails or anything, as far as from Activision saying, We did this, no.  No one did that.
> Q.  You have no facts to support your claim that we copied anything from you, do you, sir, yes or no?
> A.  I have no -- nothing that I can show the jury and say, here is what, you know --
> Q.  That's right.
> A.  -- they did at Activision.  I can't say that.
> Q  And you have no witnesses coming to this Court to get on that witness stand and testify that they have evidence that Activision copied anything from you, do you?
> A. I don't -- no, I do not.

ROA.5332:3-17.

Plaintiff knew, going into opening statements, that he would be unable to show access, so he bent the truth about the available evidence. These misrepresentations, discussed below, share a common thread—they all concerned purported evidence of access. As explained above, access was a critical element of Plaintiff's proof, as he had no direct evidence of copying and could not show striking similarity in light of the numerous differences Plaintiff acknowledged between the images. ROA.5323:20-5326:24, 5352:5-5359:20, 5364:22-5376:5. The fact that he made such misrepresentations is *itself* evidence that Plaintiff knew he had no credible evidence of access.

In his opening statement, for instance, Plaintiff's counsel promised that he would show evidence that Defendants had access to the Arroza Poster. ROA.5175:10-14 ("You're also going to hear from Activision, Carolyn Wang, who is going to tell you she's the head of marketing and she often went to Comic Cons for years and years and years. So did Booker, so did Sharmell [Plaintiff's wife], and so did our poster."). As outlined above, there was no evidence that Wang or any Activision employee was at a convention where the Arroza Poster was present, as Plaintiff well knew, and so, of course, no such evidence was presented at trial.

In closing, Plaintiff's counsel admitted that the Arroza Poster was not in Defendants' productions. ROA.5849:15-18 ("Did Activision have an opportunity to view the G.I. Bro poster? And we don't have an admission by them and we

don't have the poster in their files."). Instead of admitting that he had no evidence that Defendants' *accessed*, much less saved, used, or manipulated the Arroza Poster, Plaintiff resorted to the unsupported suggestion that Defendants must be hiding the smoking gun—that Defendants had destroyed or were hiding evidence. ROA.5875:4-16 ("Where are they? Where are the pictures of the pictures of the photo shoot? You know what I mean."). Such an argument not only violated the trial court's order granting Defendants' motion in *limine* 3, ROA.2817-18 ("The parties are not permitted to elicit testimony, offer evidence, or argue about any alleged discovery deficiencies before the jury."), it was also entirely unsupported by evidence—circumstantial or otherwise. *See Berg v. M&F W. Prods., Inc.*, No. 6:19-cv-00418-JDK, 2021 WL 2646223, at *2 (E.D. Tex. June 28, 2021) (claims frivolous under *Fogerty* where plaintiff relied on unsupported accusation that defendant's evidence of independent creation was fabricated).

Plaintiff's counsel also suggested at opening that the jury would hear Mr. Hunter, Petrol's corporate representative, testify that Petrol had photographed Plaintiff for another video game years earlier. ROA.5173:24-5174:24. But this testimony did not exist and, in fact, Petrol had never photographed Plaintiff. Mr. Hunter's testimony was presented by deposition and therefore static and known to both parties, so, at the time Plaintiff's counsel made this statement, he knew it was false. At closing, Plaintiff's counsel repeated this falsehood, claiming Mr. Hunter

had testified to knowing Plaintiff, that Plaintiff had been to Petrol studios, and that Petrol had photographed Plaintiff for video games. ROA.5873:12-15. Yet, Mr. Hunter testified to none of this, and neither did Mr. Rogers, the Petrol photographer who testified affirmatively that Plaintiff was *not* photographed by Petrol. *See* ROA.5481:20-24, 8238:11-22, 8238:25-8239:16, *see also* ROA.5671:14-17.

Plaintiff's purported evidence of access was based on smoke and mirrors. The jury did not fall for these tricks.

### (b) Plaintiff's Evidence at Summary Judgment Showed Only a "Bare Possibility" of Access.

Indeed, Plaintiff's access theory should never have survived summary judgment. At summary judgment, Defendants pointed to testimony from multiple witnesses heavily involved in the creation of the Prophet concept art that they had never seen the Arroza Poster prior to the lawsuit and had not visited regional conventions or the website where Plaintiff claimed the Arroza Poster was available. ROA.6199, ROA.6413, 6414-16 ¶¶ 6-11, 6416-17 ¶ 18 (Bunting); ROA. 6348, 6351-52 ¶¶ 9-14, 6353 ¶ 21 (Ainuddin); ROA.6217, 6221 ¶¶ 15-16 (Wang); ROA.6451, 6453 ¶¶ 7-12, 6454 ¶ 19 (Bolle), ROA.6541, 6544-45 ¶¶ 10-15, 6546 ¶ 22 (Hunter); ROA.6485, 6487-88 ¶¶ 6-11, 6489 ¶ 18 (Rogers). These unrebutted declarations alone merited summary judgment. *See Batiste*, 976 F.3d at

504 (holding no access where plaintiff offered no evidence to dispute sworn declarations that defendants had never "heard of [plaintiff] or listened to his music before this lawsuit.").

In contrast, Plaintiff's evidence presented no viable avenue of access. He pointed only to his own testimony that he took copies of the Arroza Poster with him and gave them out at trade shows and Comic Con—without identifying for which trade shows he had the Arroza Poster in tow, much less whether Defendants attended those trade shows. ROA.7306-07, 7315-16, ROA.7074:20-7075:2 (Q. Do you know about how many appearances you brought copies of this poster to? A. No. Q. Would it be more than 10? A. I don't know how many I brought it to, to be honest. I have a bag of stuff. Whatever goes in there, sometimes certain photos go in, certain photos don't go in. Whatever makes the cut.); ROA.6714:2-9 (testifying that he cannot recall distributing the Arroza Poster at any particular convention). As Defendants pointed out, in fact, the only Comic Con Plaintiff could demonstrate that he and Defendants attended was in 2015—before the Arroza Poster was created. ROA.6712:13-21, 6713:6-11 (Plaintiff); ROA.6773:20-6775:14, 6780:17-6781:6 (Travis Huffman); ROA.7127:14-7132:19 (Activision employee Carolyn Wang testifying that she attended San Diego Comic Con from 2012 to 2018 and to attending New York Comic Con but not remembering which years). This was insufficient as a matter of law to create a

35

dispute of fact regarding access. *Armour*, 512 F.3d at 153 ("Reasoning that amounts to nothing more than a 'tortuous chain of hypothetical transmittals' is insufficient to infer access.") (citation omitted).

**(c)** **Plaintiff Adduced No Evidence—at Summary Judgment or at Trial—to Rebut Defendants' Ample Evidence There Was No Striking Similarity.**

The Prophet Image and the Arroza Poster, as a matter of law and fact, were not strikingly similar. There is a veritable mountain of significant differences between the two images, to which fact and expert witnesses attested, including fact witnesses close to Plaintiff, and which Defendants itemized in their summary judgment briefing. ROA.6204-10, ROA.6829, 6831-41 ¶¶ 63-70 (Bogost Report); ROA.6819, 6821-25 ¶¶ 18-33 (Wolk Report). The only similarities between these two images are that they feature muscular, Black "warrior" men with dreadlocks holding firearms. As Dr. Ian Bogost, one of Defendants' experts, explained at trial, these features are tropes. *See, e.g.*, ROA.5712:23-5719:21 (Q: As you look at these two images, DTX 2029 [ROA.6050] and DTX 1024 [ROA.8006], and based on your expertise, do you see any substantial similarities between them? A: I -- I see two examples of a dreadlocked warrior character type, but two very distinctive characters and two renditions of those characters, visually.).



The similarities between the Prophet Image and the Arroza Poster are therefore
"common to the . . . genre or common in other" works and signify that the images
are not strikingly similar. *See Batiste*, 976 F.3d at 505 (citation omitted) (alteration
in original); *see also Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 638-39
(S.D. Tex. 2007) (two photographs of Arnold Palmer not strikingly similar due to
subtle differences in the lighting, expression and age of the subject, and angle of
the image). Plaintiff did not rebut Defendants' evidence at trial or at summary
judgment. Once these trope elements are stripped away, all that remains is a vague
similarity between the head of the Prophet Image, which was based on Mr. Romeo,
and the head of the Arroza Poster, which was based on Plaintiff.

Further, in order to establish copyright infringement, Plaintiff needed to
show that the Prophet Image copied protectable elements of the Arroza Poster. *See
Batiste*, 976 F.3d at 502 (plaintiff must establish copying is "legally actionable by
showing that the allegedly infringing work is substantially similar to protectable

elements of the infringed work."). He failed to present any expert evidence to support such a showing. And the evidence that was presented at trial demonstrated that multiple features of the Arroza Poster were themselves were copies. For instance, Plaintiff admitted that the body of the character in the Arroza Poster was "strikingly similar" to a *G.I. Joe* movie poster featuring "The Rock." ROA.5289:23-25, ROA.6050. Defendants also presented unrebutted testimony that the color scheme and background of the Arroza Poster was a known comic book style by artist Drew Struzan. ROA.5670:1-14. Plaintiff admitted he had no knowledge of and did nothing to investigate how Mr. Arroza drew the Arroza Poster. ROA.5277:11-5280:22, 5287:23-5289:25, 5362:21-5366:19, ROA.5447:4-5449:9 (Travis Huffman).

      **(d)**  **Defendants' Overwhelming Evidence of Independent Creation Was Unrebutted at Trial and at Summary Judgment.**

Further, Defendants pointed to documentary and testimonial evidence of independent creation including but not limited to: documentation of the development of the Prophet concept art (e.g., ROA.8000-08), documentation and testimony concerning how the Prophet concept art and its references were used to cast and costume Mr. Romeo (ROA.8001-03, ROA.5645:9-5646:14, 5642:23-5645:2), testimony concerning the photoshoot and selection of the photo that served as the basis for the Prophet Image (ROA.5645:9-5646:14, 5642:23-5645:2),

and testimony from Mr. Romeo himself concerning his involvement in the process (ROA.5733:17-5741:21, 5744:4-15).  Plaintiff adduced no evidence to rebut this avalanche of evidence of independent creation.  *E.g.*, ROA.5849:17-18.  For access and striking similarity, there was no genuine dispute of material fact warranting survival past summary judgment.

### 2. Plaintiff Failed to Present Evidence at Trial to Support His DMCA Claim.

Plaintiff also neglected to present evidence to prove his DMCA claim or to provide any support for his claim to over $32 million dollars in damages.

To satisfy his burden for his surviving section 1202(a) claim, for example, Plaintiff needed to present evidence that Defendants distributed false CMI in connection with the Prophet Image and that Defendants distributed such false CMI knowing it was false and intending to "induce, enable, facilitate, or conceal [copyright] infringement[.]"  17 U.S.C. § 1202(a).  Yet, Plaintiffs did not introduce evidence (i) that *any* CMI was attached to the Prophet Image or distributed with it, much less false CMI, (ii) that *any* Defendant knew that any (non-existent) CMI was false, or (iii) that *any* CMI was distributed with the intent to "induce, enable, facilitate, or conceal [copyright] infringement."  Plaintiff made no effort to prove any of these elements, no doubt because he had no evidence to do so.

Indeed, even at summary judgment, Plaintiff did not have sufficient evidence for a section 1202(a) claim.  Plaintiff had adduced no evidence that

Defendants, their employees, or independent contractors ever distributed copies of the Arroza Poster (or the G.I. Bro comic books) with false CMI affixed. Plaintiff failed to identify the works that were allegedly distributed with false CMI, or the CMI that was allegedly false. ROA.7324, 7338-43. Plaintiff also adduced no evidence that Defendants knew any CMI distributed with the Prophet Image was false or that Defendants distributed false CMI intending to induce, enable, facilitate, or conceal infringement. ROA.7324, 7338-43. This failure of evidence requires dismissal of a section 1202 claim at summary judgment. *See Philpot v. WOS, Inc.*, No. 1:18-CV-339-RP, 2019 WL 1767208, at *8 (W.D. Tex. Apr. 22, 2019) (granting summary judgment on section 1202(b) claim where no evidence of infringer's mental state when CMI was removed). The court erred in failing to grant summary judgment on the section 1202(a) claim.

### 3. Plaintiff Failed to Present Evidence at Trial to Support His Damages Theory.

Further, because Plaintiff sought infringer's profits as damages, he was obligated, in the first instance, to show a nexus between the infringer's gross revenue and the alleged infringement. *Leland Med. Ctrs., Inc. v. Weiss*, No. 4:07cv67, 2007 WL 2900599, at *1 (E.D. Tex. Sept. 28, 2007) (failure to require causal link nothing more than "pie in the sky" damage model). Instead, Plaintiff introduced no evidence to show a causal relationship between the Prophet Image and any *Black Ops 4* revenues. Plaintiff abandoned any pretext of addressing this

issue when he declined to call his own damages expert at trial.  *See Recursion Software, Inc. v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2013 WL 12403528, at *4 (E.D. Tex. Jan. 3, 2013) (damages theory objectively unreasonable where expert failed to offer opinion as to "only measure of damages Plaintiff could have recovered").

For all the reasons explained above, Plaintiff's case at trial was objectively unreasonable.

### 4. That a Case Survives Dispositive Motions Does Not Give Rise to *Per Se* Objective Reasonableness.

The district court's order denying attorneys' fees edges close to holding that because Plaintiff's case survived dispositive motions, it cannot be objectively unreasonable.  ROA.3931-32.  Specifically, the district court held that "having found at several points that Plaintiff's claims were not ripe for dismissal prior to consideration by a jury, the Court does not now find his claims unreasonable after disposition by a jury."  ROA.3932.  But this is not the law.  In the Fifth Circuit, in copyright infringement cases, attorneys' fees are routinely awarded after trial— even where the case survives summary judgment.  *E.g.*, *Hunn*, 789 F.3d at 579 (affirming award of attorneys' fees to prevailing party after bench trial on copyright issues); *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 406 (5th Cir. 2004) (noting pretrial motion practice and affirming award of attorneys' fees to prevailing party after jury trial on copyright issues); *Weeco Int'l, Inc. v.*

*Superior Degassing Servs., Inc.*, No. H-09-4003, 2012 WL 13075401, at \*\*2-3

(S.D. Tex. Mar. 23, 2012) (awarding defendants' attorneys' fees following jury

trial).[3]

 That Plaintiff was able to survive summary judgment on infringement and

on his section 1202(a) claim on such flimsy grounds should not disrupt the

presumptive award of attorneys' fees to Defendants.  Plaintiff's claims lacked any

supporting evidence and were objectively unreasonable—at trial and before—and

this factor weighs strongly in favor of awarding fees.  *See Virtual Chart Sols. I*,

2020 WL 896674, at \*7 (failure to prosecute weighs in favor of awarding

attorneys' fees to prevailing party).

---

[3] The district court also observed that its summary judgment order considered and resolved areas of unsettled law in the Fifth Circuit and cited *Lennar Homes of Texas Sales & Marketing, Ltd. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 948 (S.D. Tex. 2015).  ROA.3931-32.  *Lennar Homes* appears to be the only case in the Fifth Circuit where a trial court relied upon the presence of issues of unsettled law in the case to decline to award attorneys' fees.  But, in *Fogerty*, the Supreme Court acknowledged that resolving issues of unsettled law is actually a reason to award fees, not deny them.  See *Fogerty*, 510 U.S. at 517-18 ("Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, *it is peculiarly important that the law's boundaries be demarcated as clearly as possible*.  Thus, a defendant seeking to advance meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious infringement claims." (emphasis added)).

In *Lennar Homes*, moreover, the presence of unsettled legal issues was not dispositive, there was "substantial evidence of factual copying," and the plaintiff's evidence at trial was not fundamentally deficient, as it was here.  *Lennar Homes*, 117 F. Supp. 3d 948.  *Lennar Homes* is therefore distinguishable from the instant case.

**C.  Compensation, Deterrence, and Motivation Support an Award of Fees.**

While objective reasonableness is an "important factor," it is neither the "controlling one" nor the only factor courts must consider. *Kirtsaeng*, 579 U.S. at 208-09; *Batiste*, 976 F.3d at 507. To the contrary, the other *Fogerty* factors—compensation, deterrence, and motivation—are crucial to a court's determination of whether awarding fees furthers the goals of copyright in a particular case.

**1.  Awarding Defendants Attorneys' Fees is Defendants' Only Compensation for Winning and Deters Future Objectively Unreasonable Lawsuits.**

Interests of compensation and deterrence favor an award of fees, and these factors go hand in hand. *Spear Mktg., Inc. v. Bancorpsouth Bank*, No. 3:12-CV-3583-B, 2016 WL 193586, at *3 (N.D. Tex. Jan. 14, 2016), *aff'd*, 844 F.3d 464 (5th Cir. 2016). The expense of litigation is "considerable," and "[i]t is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement . . . ." *Fogerty*, 510 U.S. at 529 (quoting W. Strauss, Damage Provisions of the Copyright Law, Study No. 22 at 31 (H. Judiciary Comm. Print 1960)). The compensation and deterrence factors tilt in favor of awarding fees when requiring a party to shoulder its own fees undermines the purpose of the Copyright Act. *Spear Mktg., Inc.*, 2016 WL 193586, at *7. Incorporating compensation into fees award analysis is meant to protect businesses engaged in the business of creativity: "If unable to recoup

costs and fees, businesses whose defense costs outpace their alleged liability could be held hostage by *in terrorem* suits, which would hamper the progress of science and the useful arts." *Id.*

While compensation is directed toward incentives for the prevailing party, deterrence is directed toward incentives for the losing party and others similarly situated. An award of fees signals to prospective litigants that they should only bring objectively reasonable claims, that they should thoroughly investigate the claim before filing, and if it becomes clear during litigation that the claims have no merit, they should dismiss them. *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 796-97 (S.D. Tex. 2009) (awarding attorneys' fees where claims objectively unreasonable because unsupported). In contrast, denying fees in such a circumstance may spur additional unreasonable lawsuits. *Id.*

Here, Defendants knew that settling, the cheaper option, would have only encouraged Plaintiff's attorneys, and others, to continue to trump up infringement allegations against Defendants. Indeed, the fact that Plaintiff's attorneys ultimately ginned up a second lawsuit against Defendants using documents from discovery in *this* case only confirmed Defendants' suspicions. *See Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, No. H-14-1368, 2020 WL 821879, at \*\*7-8 (S.D. Tex. Feb. 19, 2020), *appeal dismissed*, 2020 WL 5642035, at \*1 (5th Cir. July 16, 2020) (noting deterrence weighs heavily where plaintiff brought similar claims

against other defendants based on same data).  Defendants knew that the only way to discourage the filing of baseless lawsuits in Plaintiff's wake would be to defend this case vigorously on the merits—and win.

So, instead of satisfying Plaintiff and his attorneys with a quick pay-out after the lawsuit was filed, Defendants painstakingly explained to Plaintiff in the August and March Letters why his copyright infringement and DMCA claims were factually wrong and legally flawed.  Yet, Plaintiff declined to engage with this evidence, failed to respond to Defendants' letters, and proceeded with his lawsuit.

Plaintiff's refusal to grapple with the evidence that disproved his allegations was the direct cause of more than two years of costly litigation—not just attorneys' invoices, but also time, resources, and opportunity costs.  And, because they were defending claims rather than prosecuting, Defendants received no monetary award to accompany the decisive jury verdict in their favor.  An award of fees here is no windfall.  Rather, an award of fees compensates Defendants *in part* for the massive costs of litigating this case.  *See Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 329 (1st Cir. 2017) (affirming award of attorneys' fees to prevailing defendant where litigation lasted over two years and noting, because defendant litigated without the prospect of an award of damages, awarding fees "would vindicate its defense on the merits"—especially given the "degree of success," which was complete victory) (citation omitted).

The case currently before the Court is exactly the kind of litigation an award of fees should "chill."  *Randolph*, 634 F. Supp. 2d at 796-97; *see also Mary Ellen Enters. v. Camex, Inc.*, 68 F.3d 1065, 1072 (8th Cir. 1995) (affirming award of attorneys' fees where losing party failed to investigate allegations).  Declining to award fees in this case therefore undermines rather than supports the goals of the Copyright Act.  *See Spear Mktg., Inc.*, 2016 WL 193586, at *7 ("Failure to award compensation here would create a perverse incentive for defendants to settle simply to avoid large litigation costs even when not at fault."); *Geophysical Serv., Inc.*, 2020 WL 821879, at **7-8 ("If the case was a toss-up and the prevailing party obtained generous damages, or injunctive relief of substantial monetary value, there is no urgent need to add an award of attorneys' fees.  But if at the other extreme the claim or defense was frivolous and the prevailing party obtained no relief at all, the case for awarding him attorneys' fees is compelling.") (citation omitted).  While Defendants have not sought to show that the entire case was frivolous, it was objectively weak and a complete failure, putting it closer to the latter end of the spectrum than the former.

Awarding Defendants fees also deters other would-be plaintiffs from engineering unsupported claims in the hopes of a quick pay-out.  The Activision Defendants are videogame juggernauts, and their incredible creative success makes them a target.  If they, and companies like them, are discouraged by the prospect of

not recovering costs after litigating meritorious defenses, nuisance settlement payments could divert resources from creative endeavors and the constant threat of litigation could stymie creativity (resulting, for example, in the recycling of existing "safe" video game properties rather than the development of new games with new characters, settings, and stories). *See Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) ("MGA's 'failure to vigorously defend against Mattel's claims could have ushered in a new era of copyright litigation aimed not at promoting expression but at stifling the 'competition' upon which America thrives.'") (citation omitted). These factors, therefore, favor the award of fees.

### 2. Plaintiff Pursued His Claims Against Activision in Bad Faith.

A key consideration when evaluating motivation is whether the plaintiff prosecuted the case in bad faith. *Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. H-12-2293, 2014 WL 11510263, at *2 (S.D. Tex. May 12, 2014), *aff'd sub nom. Macro Niche Software, Inc. v. Imaging Sols. of Australia*, 603 F. App'x 351 (5th Cir. 2015). However, bad faith is not required for an award of attorneys' fees. *See Fogerty*, 510 U.S. at 533.

Plaintiff acted in bad faith, seeking to parlay his $85 investment in the Arroza Poster into a $32 million windfall with no factual or expert evidence. ROA.5476:16-5477:17, 5854:3-5855:17. First, Plaintiff filed this lawsuit without contacting Defendants to discuss his allegations or to ask Defendants to provide

47

documentation of the creation of the Prophet Image or any references used in creating it. ROA.5335:7-10. When Plaintiff was drafting his complaint, he might have believed in good faith that he had a claim, but Defendants' August and March Letters provided irrefutable evidence that negated his allegations. The letters laid out much of the same evidence Defendants ultimately used at trial, including the concept art, photographs of William Romeo dressed as Prophet, and evidence demonstrating that the Prophet Image was drawn directly from those photos. It is telling that Plaintiff has yet to address the content of these letters or his failure to respond to them. *See Virgin Records*, 512 F.3d at 726-27 (noting that failure to address pre-suit communications "delayed . . . prompt resolution" and noting that dismissal after becoming aware of facts that contradicted allegations undermined bad faith). There is no colorable explanation other than Plaintiff was resolved to ignore all evidence in the singular pursuit of an eight figure damages award.

Second, Plaintiff's counsel made repeated misrepresentations about the evidence at trial. Plaintiff's counsel made an unsupported insinuation in closing argument (that violated the trial court's order on motion in *limine* 3) that Defendants were hiding or had destroyed evidence. Plaintiff's counsel also in opening and at closing mischaracterized the designated deposition testimony of Mr. Hunter, stating that Mr. Hunter had testified that Petrol had photographed Plaintiff when he knew it had not.

Third, Plaintiff misused the discovery process. As explained above, he attempted to generate inaccurate testimony of access from Mr. Hunter by using an attorney-made composite exhibit of images from two websites and representing that all of the images came from Petrol's website. Plaintiff did this in order to lead Mr. Hunter to erroneously testify that Petrol had photographed Plaintiff, when Plaintiff knew Petrol had not. Finally, Plaintiff's counsel used discovery from this lawsuit—including at least one document Defendants produced and deposition testimony—to engineer a second lawsuit against Defendants on behalf of a different plaintiff regarding a different video game.

For the reasons explained above, compensation, deterrence, and motivation—as well as objective reasonableness—all weigh strongly in favor of awarding fees in this case. But, even if this Court concludes that one or more of these factors does not on its own not favor fees, there is no fact or circumstance of this case that justifies upending the Fifth Circuit's practice of awarding fees "routinely." *McGaughey*, 12 F. 3d at 65 (citation omitted). Nothing here suggests that this case, particularly where Defendants were accused of infringement and prevailed, should be an "exception" rather than the "rule." *Id.*; *Hacienda Records, LP*, 2019 WL 93306, at *5 ("unusually strong" presumption of award of fees to prevailing defendant) (citation omitted); *HyperQuest, Inc.*, 632 F.3d at 387 (same). The district court abused its discretion when it held otherwise.

### 3. The Trial Court Gave Short Shrift to the Other *Fogerty* Factors and Failed to Explain Why Compensation, Deterrence, and Motivation Did Not Favor a Fee Award.

The order denying Defendants' motion for fees focused its analysis exclusively on one *Fogerty* factor—objective reasonableness. In so doing, the district court made only cursory mention of deterrence, compensation, or motivation and did not explain its conclusion that "none of the *Fogerty* factors weigh in Defendants' favor."[4] The district court's failure to apply the required factors was not only legal error, it also hinders this Court from evaluating whether the district court's ruling constituted an abuse of discretion. *See Hunn*, 789 F.3d 588-89 (affirming award of attorneys' fees where district court order explicitly stated the award promoted the purposes of the Copyright Act and provided "extensive analysis" demonstrating the court had "considered the parties' motivations, reasonableness, and the need to advance considerations of compensation and deterrence."); *see also Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 609 (7th Cir. 2002) ("But we do have to insist that the judge explain the grounds for his decision in sufficient depth to enable their reasonableness to be determined; otherwise there would be no appellate control at all over such

---

[4] The district court noted that Defendants did not make a frivolity argument, but a show of frivolity is not required for an award of attorneys' fees. *Batiste*, 976 F. 3d at 507; *see also YS Built, LLC v. Huang*, No. C15-1411-BJR, 2017 WL 1093207, at *2 (W.D. Wash. Mar. 23, 2017), *aff'd sub nom. YS Built LLC v. Ya Hsing Chiang Cind Huang*, 739 F. App'x 414 (9th Cir. 2019).

decisions."). At minimum, remand is warranted so the district court can provide a complete explanation of its reasoning why deterrence, compensation, and motivation tilt in this instance against awarding Defendants attorneys' fees. However, for the reasons explained above, there is enough evidence for this Court to rule that the trial court abused its discretion in denying Defendants' motion for attorneys' fees and to order that Defendants are entitled to fees.

## VIII. CONCLUSION AND PRAYER FOR RELIEF

Defendants respectfully request that this Court reverse the district court's order denying Defendants' motion for attorneys' fees and remand this case for a determination of the appropriate amount of attorneys' fees. In the alternative, Defendants ask this Court to remand this case with an instruction to the district court to apply the Fifth Circuit's legal presumption in favor of fees and to evaluate each of the *Fogerty* factors.

Dated: April 4, 2022

Respectfully submitted,

DURIE TANGRI LLP


By: _____ */s/ Mark A. Lemley* _____
MARK A. LEMLEY

Attorneys for Defendants-Appellants
Activision Publishing, Inc., Activision
Blizzard, Inc., Major League Gaming Corp.,
and Treyarch Corporation

51

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 4th day of April, 2022, I caused to be

electronically filed the foregoing with the Clerk of the Court using the CM/ECF

system, and served, same to the following:

Timothy Micah Dortch
Potts Law Firm LLP
2911 Turtle Creek Blvd., Suite 1000
Dallas, TX 75219
Email: mdortch@potts-law.com
Email: lulluela@potts-law.com

Attorney for Plaintiff- Appellee
BOOKER T. HUFFMAN

Christopher David Lindstrom
Potts Law Firm LLP
3737 Buffalo Speedway, Suite 1900
Houston TX 77098
Email: clindstrom@potts-law.com

Attorney for Plaintiff- Appellee
BOOKER T. HUFFMAN

Patrick Zummo
Law Offices of Patrick Zummo
Two Houston Center
909 Fannin, Suite 3500
Houston, TX 77010
Email: pzummo@zoomlaw.com

Attorney for Plaintiff- Appellee
BOOKER T. HUFFMAN

*/s/ Mark A. Lemley*
MARK A. LEMLEY

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P.32(f):

[x]      this document contains 10,851 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

[x]      this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 Version 2108 in 14-point Times New Roman font.


Dated:  April 4, 2022                    DURIE TANGRI LLP


By: _____*/s/ Mark A. Lemley*_____
MARK A. LEMLEY

Attorneys for Defendants-Appellants
Activision Publishing, Inc., Activision
Blizzard, Inc., Major League Gaming Corp.,
and Treyarch Corporation